### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DAVID CARTER, KIMBERLY BUTLER, and SAKINA CHEEKS** individually, and on behalf of others similarly situated, | Case No.: |
| Plaintiff, | Hon.: |
| vs. | |
| **PCG INTERNATIONAL, INC.**, an Illinois Corporation, | |
| Defendant. | |

### COLLECTIVE AND CLASS ACTION
### COMPLAINT AND JURY DEMAND

Plaintiffs, DAVID CARTER, KIMBERLY BUTLER, and SAKINA CHEEKS ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby brings this Class/Collective Action Complaint against Defendant PCG INTERNATIONAL, INC. ("Defendant"), and states as follows:

### INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 and arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Illinois Minimum Wage Law ("IMWL"), § 820 ILCS 105/1, *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), § 820 ILCS 115/1, *et seq.*

2.      According to its website, Defendant "is your trusted source for implementing call service centers to fit all of your needs – small or large." Defendant "can offer a wide variety of implementation strategies, daily call center execution and database management of queried calls,

1

in-going and outgoing. PCG's unique approach exceeds expectations of both the client and the caller with stream-line processes and analytics."[1]

3.     Defendant's call center services rely on the hourly employees Defendant employs to provide over-the-phone customer service.

4.     These hourly employees have a variety of internal job titles, but are collectively referred to herein as customer service representatives ("CSRs").

5.     The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry. *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

6.     One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

7.     More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

8.     Defendant requires its CSRs to work a full-time schedule, plus overtime, however, Defendant does not compensate CSRs for all work performed.

---

[1] *See*, [PCG Consulting Group: Healthcare, EMR, IT and Project Management (pcgintl.com)](pcgintl.com) (last visited on 8/19/22).

9. Defendant requires their CSRs to perform compensable work tasks off-the-clock before and after their scheduled shifts and during their unpaid meal periods.

10. This policy results in CSRs not being paid for all time worked, including overtime.

11. In the course of performing their job responsibilities, Defendant's CSRs use multiple computer networks, software programs, applications and phone systems.

12. The time CSRs spend booting up and logging into these programs and applications before, during and after their shifts is compensable because the programs and applications are an integral, indispensable and important part of the CSRs' work, and they cannot perform their jobs effectively without them.

13. Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

14. Upon information and belief, Defendant's CSRs all follow the same timekeeping process and are subject to the same relevant timekeeping and attendance policies.

15. Plaintiffs seek to represent in this action all current and former CSRs who are similarly situated to each other in terms of their positions, job duties, pay structure and Defendant's violations of federal and state law.

16. Defendant knew or should have known how long it takes CSRs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for this work, but did not.

17. Defendant knew or should have known that CSRs, including Plaintiff, worked overtime hours for which they were not compensated.

18. Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive

3

and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make him, the Collective and Class whole for damages they suffered, and to ensure that he and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

19.     This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

20.     Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

21.     Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

22.     This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

23.      Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.

24.     Defendant's CSRs, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of phone lines in the performance of their job duties.

25.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiffs' federal claims that they form

part of the same case or controversy under Article III of the United States Constitution.

26.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

27.     This Court has personal jurisdiction over Defendant because it conducts business within the state of Illinois, has its principal place of business in Illinois, is registered with the Illinois Secretary of State and employs individuals within the state of Illinois.

28.     This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of Illinois, has established minimum contacts sufficient to confer jurisdiction over it and has its principal place of business in this district and division; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## **VENUE**

29.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts substantial business activities within this District and maintains its principal place of business in this District.

## **PARTIES**

30.     Plaintiff DAVID CARTER ("Plaintiff Carter") is an Illinois resident who worked for Defendant as a remote CSR in Illinois within the last three years.

31.     Defendant paid Plaintiff Carter for his services in the form of an hourly wage, for all credited hours worked, most recently at the rate of $16.64 per hour.

32.     Plaintiff Carter signed a consent to join this collective action lawsuit. **Exhibit 1**, Carter Consent to Join.

5

33.     Plaintiff KIMBERLY BUTLER ("Plaintiff Butler") is an Illinois resident who worked for Defendant as a remote CSR in Illinois within the last three years.

34.     Defendant paid Plaintiff Butler for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of approximately $16.00 per hour.

35.     Plaintiff Butler signed a consent to join this collective action lawsuit. **Exhibit 2**, Butler Consent to Join.[2]

36.     Plaintiff SAKINA CHEEKS ("Plaintiff Cheeks") is an Illinois resident who worked for Defendant as a remote CSR in Illinois within the last three years.

37.     Defendant paid Plaintiff Cheeks for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of $17.00 per hour.

38.     Plaintiff Cheeks signed a consent to join this collective action lawsuit. **Exhibit 3**, Cheeks Consent to Join.

39.     Defendant is an Illinois Corporation (File Number 63785121) with its principal place of business located at 1701 S. 1st Avenue, Maywood, Illinois 60153.

## GENERAL ALLEGATIONS

40.      Defendant employed Plaintiffs as remote CSRs from Plaintiffs' home offices in Illinois within the last three (3) years.

41.     Defendant's CSRs are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before fielding phone calls; (b) taking in-bound calls from and making out-bound calls to individuals who need assistance with unemployment benefits; (c) ensuring that every call is documented and accounted for in Defendant's system; and (d) logging

---

[2] In approximately October 2020, Plaintiff Butler was elevated to a salaried position. This lawsuit does not encompass her time as a salaried employee for Defendant.

out of the computer software programs and applications and the hard phones and shutting down their computers.

42.    Defendant's CSR jobs are hourly, non-exempt positions with rigid schedules that require CSRs, including Plaintiffs, to work at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) hours or more in a workweek.

43.    These schedules result in CSRs routinely working overtime on a weekly basis.

44.    Indeed, throughout their employment with Defendant, Plaintiffs were required to work a substantial amount of unpaid time, including overtime, as part of their roles as a CSR.

45.    At all relevant times, Defendant controlled their CSRs' work schedules, duties, protocols, applications, assignments and employment conditions.

46.    Defendant was also responsible for training and continuing their CSRs' education in their role as CSRs.

47.    Defendant' CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

48.    These programs, applications and systems are integral and an important part of the CSRs' work, and they cannot perform their jobs without them.

49.    Defendant's CSRs all follow the same timekeeping process, are subject to the same relevant timekeeping and attendance policies, and are subject to quality assurance reviews based on the same or similar criteria.

50.    Defendant expressly instructs and trains CSRs to have all of their computer networks, software programs and applications open and ready at the start of their scheduled shifts and before they can log into Defendant's phone system and begin taking and making phone calls.

51.    CSRs, including Plaintiffs, are instructed to only include the time that they are fully

prepared to field calls in their hours worked each shift..

52.     Defendant furthermore enforces their policy of requiring all computer networks, programs and applications be open and ready at the commencement of a CSR's shift, and critically, before the clock in, through their performance metrics.

53.     More specifically, being clocked in but unavailable to take calls for too long can result in poor performance scores and possible disciplinary action, up to and including termination.

54.     Defendant's scoring guidelines measure a CSRs' ability to adhere to mandatory protocols and are comprised of various performance metrics, including but not limited to the CSRs' complete and correct resolution of issues and inquiries.

55.     This performance metric necessarily requires that CSRs be logged into all computer programs, applications and systems, and have all reference materials and available resources open at the time of the call.

56.     Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

57.     Because CSRs are prohibited from including all hours worked in their time recorded, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

58.     Thus, the hours reflected on the CSRs' pay stubs are inaccurate and contrived by Defendant.

59.     In fact, as outlined below, Defendant maintain a common plan and policy pursuant to which they fail to pay their CSRs for no less than twelve (12) minutes per day of work performed during pre- and post-shift time and during their lunch periods.

60.     This time could easily be recorded, accounted for and paid, but for Defendant's

8

choice not to credit such time as time worked.

### A. Pre-Shift Off-the-Clock Work

61.    In addition to their regularly scheduled shifts, and as mentioned above, Defendant's CSRs perform pre-shift work tasks for which they are uncompensated.

62.    Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

63.    The pre-shift startup and login process takes substantial time on a daily basis with said time averaging ten (10) to fifteen (15) minutes per day, and the tasks can take longer if CSRs experience technical problems with the computer, software, and/or applications.

64.    Prior to the commencement of each scheduled shift, Plaintiffs, as well as the other CSRs, were required to complete the following tasks or tasks substantially similar to the tasks below:

        a.  Turn on their computers;

        b.  Check internet connection and speed;

        c.  Open the Chrome browser;

        d.  Start the Citrix Virtual Desktop ("VDI"), which often took more than one attempt;

        e.  After successfully launching the VDI, open Finesse (the tool that tells CSRs what state they are in, call duration, and other metrics);

        f.  Open Jabber, which works with Finesse to control call state and call management;

g. Log into IBIS, the state's tool for managing unemployment claims[3];

h. Open a call tracker to record all call summaries throughout the day;

i. Outside of the VDI, set up two notepads, one for call totals and one for call summaries;

j. Log into Microsoft Teams for pre-shift meetings and instructions; and

k. Finally, clock in and begin receiving calls.

65. The aforementioned tasks are an integral and essential aspect of a CSR's job duties and responsibilities, as CSRs must have all of the above referenced computer programs, systems, and applications up and running on their computers and hard phone in order to be prepared to accept incoming calls.

66. Yet, Defendant fails to compensate CSRs for the computer boot up tasks.

67. As a result, Defendant maintains a common plan and policy pursuant to which they fail to pay CSRs for no less than ten (10) minutes per day of work performed in connection with the above pre-shift activities.

**B.    Meal-Period Off-the-Clock Work**

68. Defendant provides their CSRs with one (1) thirty (30) minute unpaid lunch break per shift.

69. In reality, Defendant routinely requires CSRs to perform work during their unpaid lunch breaks.

70. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

---

[3] Occasionally, it was necessary to have two separate sessions of IBIS open to manage and research claim issues properly.

*Bona fide meal periods*. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

71. Defendant does not provide CSRs with a bona fide meal period because its policies and procedures require CSRs to return from their lunch early to perform at least part of the boot up process outlined above.

72. CSRs spend approximately one (1) to two (2) minutes performing this work during their unpaid meal breaks on most days, however, such time is even greater, when CSRs are required to do a complete reboot.

73. Defendant's management is aware that this was Plaintiffs and other CSRs' perform these tasks off the clock, and could have paid CSRs for this time, but did not.

### C.   Post-Shift Off-the-Clock Work

74.   Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required at the end of each shift to log out of the essential computer software programs and applications utilized during their shifts.

75.   The shutdown and logout process requires another one (1) to two (2) minutes of off the clock work per shift.

76.   Pursuant to Defendant's policies, training and direction, Plaintiffs and the other CSRs are not allowed begin the shutdown and logout process until their scheduled shift ends and they complete their last fielded call.

77.   Defendant did not compensate CSRs for all the time spent shutting down and

logging out of their essential work systems.

78.     The unpaid off-the-clock work performed subsequent to each shift by Plaintiffs and all other CSRs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

### D.     Exemplary Pay-Period to Illustrate Pre-Shift, Meal-Period and Post-Shift Compensation Deficiencies

79.     An example of specific workweeks where Defendant failed to pay Plaintiff Oliver all overtime due for hours worked in excess of forty (40) hours, as mandated by the FLSA, includes the following:

**Pay Period of 04/01/2022 to 04/15/2022**

- Plaintiff Carter was paid at a rate of $16.64 per hour for the 76.70 regular hours and $24.96 per hour for 0.33 overtime hours Defendant credited him with as having worked.

- With unpaid pre-shift, meal-period, and post-shift time, in a range of twelve (12) to nineteen (19) minutes per shift, at five shifts per week, Plaintiff Carter should have been paid an additional sixty (60) to ninety five (95) minutes at his overtime rate of $24.96 during the overtime workweek.

**Exhibit 4**, Carter Pay Stub.

80.     Plaintiffs Butler and Cheeks similarly routinely worked over forty hours or more hours per week.

81.     The off-the-clock hours at issue herein constitute overtime hours worked in virtually all workweeks.

### E.     Defendant Benefitted From the Uncompensated Off-the-Clock Work

82.     At all relevant times, Defendant directed and directly benefitted from the work performed by Plaintiffs and similarly situated employees in connection with the above-described pre-shift, meal-period and post-shift activities performed by CSRs.

83. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their CSRs.

84. At all relevant times, Defendant was able to track the amount of time CSRs spent in connection with the pre-shift, meal-period and post-shift activities.

85. Defendant failed to do so and failed to compensate CSRs for the off-the-clock work they performed.

86. At all relevant times, CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

87. At all relevant times, Defendant used their attendance, adherence and timekeeping policies against the CSRs in order to pressure them into performing the pre-shift, meal-period and post-shift off-the-clock work.

88. Defendant expressly trained and instructed CSRs to perform the above-described pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to take calls (i.e., were "phone ready") the moment their shifts began.

89. At all relevant times, Defendant's policies and practices deprived CSRs of wages owed for the pre-shift, meal-period and post-shift activities they performed.

90. Because Defendant's CSRs typically worked forty (40) hours or more in a workweek, Defendant' policies and practices also deprived them of overtime pay in many workweeks.

91. Defendant knew or should have known that the time spent by CSRs in connection with the pre-shift, meal-period and post-shift activities was compensable under the law.

92. In light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

93.     Despite knowing CSRs performed work before and after their scheduled shifts and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

94.     Unpaid wages related to the off-the-clock work described herein are owed to CSRs at the FLSA mandated overtime premium of one and one-half their regular hourly rate because CSRs regularly worked in excess of forty (40) hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

95.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former CSRs who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

96.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated CSRs.

97.     Excluded from the proposed FLSA Collective are Defendant's executives and administrative and professional employees, including computer professionals and outside salespersons.

98.     Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond forty (40) hours in a workweek.

99.     Defendant assigned and/or were aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

100.     As part of their regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

      a.    Willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek; and

      b.    Willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendant.

101.     Defendant is aware or should have been aware that federal law requires them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

102.     Defendant's unlawful conduct has been widespread, repeated and consistent.

103.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).

104.     The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

105.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location and rate of pay.

106.     The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal period time, and the amount of post-shift shut down/log out time owed to each

employee – do not vary substantially among the proposed FLSA Collective members.

107. Many similarly situated current and former CSRs have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

108. Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

109. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

110. Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

111. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 ILLINOIS CLASS ACTION ALLEGATIONS

112. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of:

> *All current and former CSRs who worked for Defendant in Illinois at any time during the applicable statutory period*.

(hereinafter referred to as the "Rule 23 Illinois Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

113. The members of the Rule 23 Illinois Class are so numerous that joinder of all Rule 23 Illinois Class members in this case would be impractical.

114. Plaintiffs reasonably estimate that there are hundreds of Rule 23 Illinois Class members. Rule 23 Illinois Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

16

115.    There is a well-defined community of interest among Rule 23 Illinois Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Illinois Class.

116.    These common legal and factual questions include, but are not limited to, the following:

      a.    Whether the pre-, mid-, and post-shift time Rule 23 Illinois Class members spend on start-up/log-in activities, shut-down activities, and mid-shift call logging activities off the clock each shift is compensable time;

      b.    Whether Defendant breached its agreement with the Plaintiffs and the Rule 23 Illinois Class to pay for all hours worked at the agreed upon rate; and

      c.    Whether the Rule 23 Illinois Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, and if so, the appropriate amount thereof.

117.    Plaintiffs' claims are typical of those of the Rule 23 Illinois Class in that they and all other Rule 23 Illinois Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

118.    Plaintiffs' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Illinois Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Illinois Class members.

119.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Illinois Class and she has retained counsel who are qualified and experienced in the prosecution of Illinois wage and hour class actions.

120.    Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Illinois Class.

121.    A class action is superior to other available methods for the fair and efficient

adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Illinois Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

122.    Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

123.    This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant and their corporate/government clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

124.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

125.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Illinois Class and declaratory relief is appropriate in this case with respect to the Rule 23 Illinois Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
### (29 U.S.C. § 216(b) Collective Action)
### VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq.*
### FAILURE TO PAY OVERTIME WAGES

126.    Plaintiffs re-allege and incorporates all previous paragraphs herein.

127.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

128.    At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

18

129. Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

130. Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

131. At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

132. At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform no less than twelve (12) to nineteen (19) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

133. In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

134. Defendant's violations of the FLSA were knowing and willful.

135. Defendant knew or could have determined how long it takes its CSRs to perform their off-the-clock work.

136. Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

137. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional

equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 Illinois Class Action)**
**Illinois Minimum Wage Law, §§ 820 ILCS 105/1, *et seq*.;**
**Illinois Wage Payment and Collection Act, §§ ILCS 115/1, *et seq*.;**

138.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

139.    The promises made by Defendant to compensate CSRs on an *hourly rate for all hours worked* (the agreement) is binding upon Defendant for purposes of the Illinois Minimum Wage Law (IMWL) and Illinois Wage Payment and Collection Act (IWPCA) discussed herein.

140.    Indeed, Plaintiffs and every other Illinois Class Member had an agreement with Defendant that they would be paid based at their agreed upon hourly rate (and overtime rate when applicable) for *all* hours worked. Defendant promised all CSRs they would be paid an hourly wage for *all* hours worked.

141.    As discussed herein, Defendant failed to pay Plaintiff Oliver and the Rule 23 Illinois Class for all wages (regular and overtime) owed.

142.    Through the implementation of their written timekeeping and attendance policies, as well as the verbal representations made by Defendant's management to CSRs regarding their attendance, scheduling, and hourly compensation, Defendant promised Plaintiffs and the Rule 23 Illinois Class payment at their regular hourly rate for *all* hours worked in exchange for the performance of the CSRs' job duties.

143.    Plaintiffs accepted that offer, performed the duties of a CSR for Defendant, but Defendant breached their agreement with Plaintiffs and the Rule 23 Illinois class by failing to pay them for *all* hours worked as promised.

144.    At all times relevant to the action, Defendant was an employer covered by the mandates of the IMWL, and Plaintiffs and the Rule 23 Illinois Class are employees entitled to the

IMWL's protections.

145.    The IMWL, §§ 820 ILCS 105/1, et. seq. requires employers to pay their employees minimum wages and time-and-a-half their regular rate of pay of hours worked in excess of forty (40) per week. *See* § 820 ILCS 105/4; 820 ILCS 105/4a.

146.    820 ILCS 105/12(a) provides that an employee who is not paid in accordance with the Illinois Minimum Wage Law "the employee may recover in a civil action treble the amount of any such underpayments together with costs and such reasonable attorney fees as may be allowed by the Court, and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid."

147.    The IWPCA "applies to all employers and employees in [Illinois], but excepting employees of the State or Federal governments." Plaintiffs and the Rule 23 Illinois class were not employees of the State or Federal government, therefore, they are entitled to the protections of the IWPCA.

148.    Under 820 ILSC 115/4, "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned."

149.    Under 820 ILSC 115/5, "every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee."

150.    820 ILCS 115/9 prohibits "deductions by employers from wages or final compensation." Accordingly, in workweeks that the Defendant unilaterally altered time records to exclude the pre-, mid-, and post-shift activities discussed herein, Defendant violated 115/9 of the IWPCA.

151.     Additionally, 820 ILCS 115/14(a) provides that "an employee aggrieved by an employer's violation of the Illinois Wage Payment and Collection Act "shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees."

152.     Defendant violated the IMWL and the IWPCA by regularly and repeatedly failing to compensate Plaintiffs and the Rule 23 Illinois Class for the time spent on the work activities described in this Complaint.

153.     As a result, Plaintiffs and the Rule 23 Illinois Class have and will continue to suffer loss of income and other damages.  Accordingly, Plaintiffs and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief under the IMWL at an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf, on behalf of the putative FLSA Collective, and on behalf of the Rule 23 Illinois Class requests judgment as follows:

a.     Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.     Certifying this action as a class action (for the Rule 23 Illinois Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims under the IMWL and IWPCA (Count II);

c.     Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and the Rule 23 Illinois Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to join and participate in this lawsuit;

d.   Designating Plaintiffs as the representative of the FLSA collective action and the Rule 23 Illinois Class, and undersigned counsel as Class counsel for the same;

e.   Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

f.   Declaring Defendant's violation of the FLSA was willful;

g.   Declaring Defendant violated the IMWL and the IWPCA as cited herein;

h.   Declaring Defendant's violation of the IMWL and IWPCA was willful;

i.   Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the collective action Class and the Rule 23 Illinois Class the full amount of damages and liquidated damages available by law;

j.   Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

k.   Awarding treble damages and penalty interest as provided by the IMWL and IWPCA;

l.   Awarding other pre- and post-judgment interest to Plaintiff on these damages; and

m.   Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: August 24, 2022          Respectfully Submitted,

**ASH LAW, PLLC**

*s/ Charles R. Ash, IV*
Charles R. Ash, IV (P73877) (*Admitted*)
402 W. Liberty  St.
Ann Arbor, MI 48178
Phone: (734) 234-5583
Email: cash@nationalwagelaw.com

**MORGAN & MORGAN, P.A.**
Andrew R. Frisch (FBN 027777) (*Admitted*)
55 E Monroe Street, Suite 3800
Chicago, IL 60603Phone: (954) WORKERS
Fax: (954) 327-3013
AFrisch@forthepeople.com

**HOOPER HATHAWAY, P.C.**
Oscar Rodriguez (P73413) (*Pro Hac Vice*)
126 Main St
Ann Arbor, MI 48104-1903
Phone: (734) 662-4426
Email: orod@hooperhathaway.com

*Counsel for Plaintiffs and the
Putative Collective/Class Members*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

*s/ Andrew R. Frisch*
Andrew R. Frisch